UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RAYMOND KOLLIDAS and ROSANNA
KOLLIDAS,

        Plaintiffs,

     v.                                             21-CV-1126-LJV
                                                     DECISION & ORDER
THE CINCINNATI INSURANCE
COMPANY,

        Defendant.

_____

On September 16, 2021, the plaintiffs, Raymond and Rosanna Kollidas, commenced this declaratory judgment action against The Cincinnati Insurance Company ("Cincinnati") in New York State Supreme Court, Erie County. *See* Docket Item 1-1. The plaintiffs seek a judgment declaring that Cincinnati is obligated to defend and indemnify them in connection with the personal injury action *Heneghan v. Kodiak Builders, Inc.*, Case No. 800379/2020 (Sup. Ct. Erie Cnty. Jan. 9, 2020). *See id.* Cincinnati removed the declaratory judgment action to this Court on October 15, 2021, Docket Item 1, and answered the complaint on January 10, 2022, Docket Item 13.

On July 28, 2023, the plaintiffs moved for summary judgment, Docket Item 40; the same day, Cincinnati cross-moved for summary judgment, Docket Item 41, and moved to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party, Docket Item 42. The plaintiffs then responded to Cincinnati's motions and replied in support of their own motion for summary judgment, Docket Items 44 and 48, and Cincinnati replied as well, Docket Items 45, 49, and 50.

For the reasons that follow, the plaintiffs' motion for summary judgment, Docket Item 40, Cincinnati's cross-motion for summary judgment, Docket Item 41, and Cincinnati's motion to dismiss, Docket Item 42, are all denied.

## BACKGROUND[1]

On November 10, 2014, the plaintiffs purchased the lot at 93 Nottingham Terrace in Buffalo, New York. Docket Item 40-43 at ¶ 28; Docket Item 41-41 at ¶ 1. At the time of the purchase, the plaintiffs lived at 9720 Rocky Point Road in Clarence, New York. *See* Docket Item 40-43 at ¶ 13. But the plaintiffs intended to build their dream home on the 93 Nottingham Terrace property. *See* Docket Item 41-41 at ¶ 2.

On February 21, 2017, the plaintiffs sold their home on Rocky Point Road. Docket Item 40-43 at ¶¶ 14-15; Docket Item 41-41 at ¶ 6. Around the same time, the plaintiffs and their four sons moved into the home of Markos and Anna Bahas at 9080 Hillview Drive in Clarence, New York. Docket Item 40-43 at ¶ 16; Docket Item 41-41 at ¶ 7. The Bahases are the parents of Rosanna Kollidas. *See* Docket Item 41-41 at ¶ 8.

On November 15, 2017, the plaintiffs hired Kodiak Builders, Inc., to build their home on Nottingham Terrace. *See* Docket Item 40-43 at ¶¶ 29-30; Docket Item 41-41 at ¶ 4. The plaintiffs also obtained a homeowner's insurance policy on the Nottingham Terrace property from New York Central Mutual Fire Insurance Company ("NYCM").

---

[1] "When parties cross-move for summary judgment, . . . each motion is analyzed separately, in each case construing the evidence in the light most favorable to the non-moving party." *Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394 (2d Cir. 2023) (internal quotation marks and citation omitted). The following facts are drawn from the parties' statements of undisputed facts, *see* Docket Items 40-43 and 41-41, as well as the exhibits submitted by the parties in support of their motions for summary judgment.

Docket Item 40-43 at ¶ 31; Docket Item 41-41 at ¶¶ 25-28; *see* Docket Items 40-8 and

41-18 (copies of NYCM policy).  The NYCM policy provided $500,000 in liability

coverage on the property beginning on January 30, 2018.  *See* Docket Item 40-43 at

¶ 32; Docket Item 40-8 at 4; Docket Item 41-18 at 5.[2]

By August 2018, however, the plaintiffs began to encounter financial difficulties

and failed to complete construction or obtain a certificate of occupancy for the

Nottingham Terrace property.  Docket Item 40-43 at ¶ 35; Docket Item 41-41 at ¶¶ 12,

14.  They also failed to renew their NYCM policy, and, as a result, the policy's coverage

lapsed on March 15, 2019.  Docket Item 40-43 at ¶ 23; Docket Item 41-41 at ¶¶ 29-32;

*see* Docket Item 40-28 at 5-6 (notice of cancellation dated February 27, 2019).

Ultimately, the plaintiffs decided to put 93 Nottingham Terrace up for sale "as is."

Docket Item 40-43 at ¶ 36; Docket Item 41-41 at ¶ 15.

The plaintiffs hired Tracey Heneghan to act as their agent for the sale.  Docket

Item 41-41 at ¶ 33; *see* Docket Item 40-29 at 78; Docket Item 41-3 at 79.  On July 7,

2019, when Heneghan visited the property to prepare for an open house scheduled to

take place the following day, she fell through a hole in the floor and sustained significant

injuries.  Docket Item 40-43 at ¶¶ 38-40; Docket Item 41-41 at ¶¶ 34-35; *see* Docket

Item 41-27 at 51-55.

At the time of Heneghan's accident, the Bahases had two insurance policies

through Cincinnati: a homeowners' policy and an umbrella policy (collectively, "the

policies").  Docket Item 40-43 at ¶ 19; Docket Item 41-41 at ¶¶ 41-43; *see* Docket Items

40-13, 40-14, and 41-35 (copies of the policies).  The policies covered both the

---

[2] Page numbers in docket citations refer to ECF pagination.

Bahases and their "resident relatives."  *See* Docket Item 40-13 at 5, 7; Docket Item 40-14 at 5, 7; Docket Item 41-35 at 6, 8, 74, 76.

On January 9, 2020, Henegan sued Kodiak Builders, *see* Docket Item 40-43 at ¶ 41; Docket Item 41-41 at ¶ 38, and on October 2, 2020, Kodiak filed a third-party action against the plaintiffs.  Docket Item 40-43 at ¶ 42; Docket Item 41-41 at ¶ 39.  The next month, the plaintiffs asked Cincinnati to defend and indemnify them in the Heneghan personal injury action based on their status as "resident relatives" of the Bahases.  Docket Item 40-43 at ¶ 43; Docket Item 41-41 at ¶ 54; *see* Docket Item 40-15 at 1-2 (notice of loss sent by the plaintiffs' counsel to Cincinnati).  Cincinnati then began to investigate the plaintiffs' request.  Docket Item 40-43 at ¶ 44; Docket Item 41-41 at ¶¶ 55-66; *see* Docket Items 40-16 and 41-36 (copies of Cincinnati's claim report).

On September 16, 2021, however, the plaintiffs filed this declaratory judgment action.  *See* Docket Item 40-43 at ¶ 49; Docket Item 40-17 at 2-3 (copy of notice and summons against Cincinnati).  Cincinnati then removed the case to this Court, and a short time later, it sent the plaintiffs a notice of disclaimer.  Docket Item 40-43 at ¶ 52; Docket Item 41-41 at ¶ 61; *see* Docket Items 40-19 and 41-39 (copies of Cincinnati's notice of disclaimer).

## LEGAL PRINCIPLES

### I.    MOTION FOR SUMMARY JUDGMENT

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).  Conversely, "[s]ummary judgment should be denied if, when the party against

whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id.* "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence." *Id.*

"If the evidence submitted in support of [a] summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (emphasis, internal quotation marks, and citation omitted). "An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted).

## II.    THE DECLARATORY JUDGMENT ACT

The Declaratory Judgment Act ("DJA") "provides that 'in a case or actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (alterations adopted) (emphasis omitted) (quoting 28 U.S.C. § 2201(a)). Stated differently, "the DJA creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not yet reached the stage at which either party may seek a coercive remedy." *Id.* (internal quotation marks and citation omitted).

"The Supreme Court has 'explained that the phrase "case or actual controversy" in the DJA refers to the same type of "Cases" and "Controversies" that are justiciable

under Article III.'"  *Id.* (alterations adopted) (quoting *MedImmune, Inc. v. Genetech, Inc.*,

549 U.S. 118, 127 (2007)).  And "[i]ndeed, litigation over insurance coverage has

become the paradigm for asserting jurisdiction [under the DJA] despite future

contingencies that will determine whether a controversy ever actually becomes real."

*Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (internal

quotation marks and citation omitted).

## DISCUSSION

### I.   CINCINNATI'S MOTION TO DISMISS

Before turning to the merits of the dueling motions for summary judgment, the

Court first addresses Cincinnati's motion to dismiss.  *See* Docket Item 42.  At the time of

Heneghan's accident, the plaintiffs had a personal liability umbrella policy through The

Automobile Insurance Company ("Automobile").  *See* Docket Item 41-22.  Cincinnati

argues that Automobile is a necessary party to this action under Federal Rule of Civil

Procedure 19.  *See* Docket Item 42-1 at 7-10.  According to Cincinnati, "this Court

cannot grant complete relief [to the plaintiffs] because no declaration or judgment

w[ould] be binding on Automobile"; as a result, Cincinnati says, this action should be

dismissed under Federal Rule of Civil Procedure 12(b)(7).  *See id.*

In response, the plaintiffs argue that Automobile is not a necessary party

because they "are not asking this Court to determine priorities of coverage."  Docket

Item 44-5 at 2.  Rather, the plaintiffs characterize their "request for relief [as] simply a

judgment for the unpaid fees and disbursements together with a declaration that

[Cincinnati] has an obligation to indemnify [the plaintiffs] in the event a judgment is

rendered against them in the [u]nderlying Heneghan [personal injury] [a]ction." *Id.* This Court agrees with the plaintiffs.

Rule 12(b)(7) provides for the dismissal of a complaint based on the "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7); *see Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 356 (2d Cir. 2015). Rule 19, in turn, "sets forth a two[-]step inquiry for determining whether an action must be dismissed for failure to join an indispensable party." *Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir. 1990).

First, the court "determine[s] whether the party should be joined as a 'necessary' party under Rule 19(a)." *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 681 (2d Cir. 1996). That rule provides, in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among the existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Second, the court decides under Rule 19(b) "whether, in equity and good conscience, the party is one without whom the action between the remaining parties cannot proceed—or, in the traditional terminology, whether the absent party is indispensable." *Am. Trucking Ass'n, Inc.*, 795 F.3d at 357 (internal quotation marks and citations omitted). But "[u]nless Rule 19(a)'s threshold standard is met, [a] court need not consider whether dismissal under Rule 19(b) is warranted." *Assoc. Dry Goods Corp.*, 920 F.2d at 1123.

Here, Automobile is not a "necessary" party under Rule 19(a).  On March 23, 2023, Automobile agreed to defend the plaintiffs in the Heneghan personal injury action and to indemnify them subject to a $300,000 deductible.  *See* Docket Item 41-23.  So the issues in this case are: (1) whether Cincinnati or the plaintiffs are responsible for the $22,801.64 in legal fees that the plaintiffs incurred before March 23, 2023; and (2) if a judgment is entered against the plaintiffs in the Heneghan personal injury action, whether Cincinnati or the plaintiffs are responsible for the $300,000 deductible.  *See* Docket Item 40-43 at ¶¶ 56-57; Docket Item 41-41 at ¶¶ 69-70.  Automobile has no real interest in the resolution of those issues, and the Court may resolve them without Automobile's participation.  *See, e.g.*, *Travelers Indem. Co. v. Crown Cork & Seal Co., Inc.*, 865 F. Supp. 1083, 1089 (S.D.N.Y. 1994).  As a result, Automobile is not a necessary party to this action under Rule 19(a), and Cincinnati's motion to dismiss therefore is denied.

## II.    THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

In their motion for summary judgment, the plaintiffs argue that they are entitled (1) "to be reimbursed for legal fees and costs in the amount of $22,801.64 incurred for the defense of the Heneghan [personal injury] [a]ction from the time period from October 6, 2020[,] to March 22, 2023," and (2) "to indemnification in the Heneghan [personal injury] [a]ction."  Docket Item 40-44 at 7-8.  In its cross-motion for summary judgment, Cincinnati argues that it has no duty to defend or indemnify the plaintiffs under the policies.  *See* Docket Item 41-40 at 16-29.  This Court concludes that there are genuine issues of material fact precluding summary judgment in favor of either side.

Under New York law,[3] insurance contracts are interpreted "like any ordinary contract." *See Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 56 (2d Cir. 2021) (internal quotation marks and citation omitted). And "[i]n a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous, which is a question of law for the court." *Great Minds v. Fedex Off. & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018) (internal quotation marks and internal citations omitted).

"Ambiguous language is that which is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally understood in the particular trade or business." *Utica Mut. Ins. Co.*, 7 F.4th at 56 (internal quotation marks and citation omitted). But "[a] contract 'that is complete, clear[,] and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Id.* (quoting *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 91 N.E.3d 1186, 30 N.Y.3d 508, 519 (2017)). So "[i]f the contract, read as a whole, is reasonably susceptible of only one meaning, a court is not free to alter the contract." *Id.* (internal quotation marks and citation omitted).

---

[3] "A federal court sitting in diversity must apply the choice of law rules of the forum state," which in this case is New York. *See Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538-39 (2d Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). Under New York's choice of law rules, "an agreement between the parties to apply New York law, even if implicit, is sufficient to establish the appropriate choice of law." *Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 600 (S.D.N.Y. 2016). Both the plaintiffs and Cincinnati rely on New York law in their briefs, *see* Docket Items 40-44 and 41-40, so this Court will interpret the policies under New York law, *see, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (alteration, internal quotation marks, and citation omitted)).

Here, the parties' dispute centers around the policies' definition of "resident relative." *See* Docket Item 40-44 at 20-23; Docket Item 41-40 at 16-20. The homeowners' policy defines a "resident relative" as "[a] person related to [the Bahases] by blood, marriage[,] or adoption that is a resident of [the Bahases'] household and who is domiciled [at 9080 Hillview Drive]." Docket Item 40-13 at 9; Docket Item 41-35 at 8. Similarly, the umbrella policy defines a "resident relative" as "[a] person related to [the Bahases] by blood, marriage[,] or adoption that is a resident of [the Bahases'] household and whose legal residence of domicile is the same as [the Bahases]." Docket Item 40-14 at 8; Docket Item 41-35 at 77.

Cincinnati argues that "under the plain and unambiguous terms" of the policies, the plaintiffs "do not qualify as resident relatives" because they were not domiciled at 9080 Hillview Drive at the time of Heneghan's accident. *See* Docket Item 41-40 at 16-20. But because the policies do not define the term "domicile" as it is used in the definition of "resident relative," this Court must look elsewhere to ascertain its meaning. *See Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 617 (2d Cir. 2001) ("[I]t is quite possible that even where a contract does not define a particular—and potentially ambiguous—term, a body of state law or an established custom fills in the gaps left by the drafters."). And that search leads to at least two different possible definitions.

Cincinnati asserts that the plaintiffs were not domiciled at 9080 Hillview Drive at the time of Heneghan's accident because they "never intended to make the Bahases' home their fixed and *permanent* home." *See* Docket Item 41-40 at 20 (emphasis added). That argument comports with the definition of "domicile" under New York state

10

law, which "means living in [a certain] locality with [the] intent to make it a fixed and permanent home."  *See In re Newcomb*, 84 N.E. 950, 192 N.Y. 238, 250 (1908); *see also Hosley v. Curry*, 649 N.E.2d 1176, 85 N.Y.2d 447, 451 (1995) ("For a change to a new domicile to be effected, there must be a union of residence in fact and an absolute and fixed intention to abandon the former and make the new locality a fixed and permanent home." (internal quotation marks and citation omitted)).

According to the plaintiffs, however, they were domiciled at 9080 Hillview Drive at the time of Heneghan's accident because their "physical presence was at [that address]—and only [at that address]—and their intent was to remain there indefinitely until they found another home."  *See* Docket Item 40-44 at 23.  They look to federal law, *see id.* at 21, in which courts for the purposes of diversity jurisdiction define "domicile" as "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning," *see Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (internal quotation marks and citation omitted); *see also Apace Commc'ns, Ltd. v. Burke*, 2009 WL 1748711, at *3 (W.D.N.Y. June 19, 2009) (explaining that "[t]o effect a change in domicile, . . . the party must reside in a new domicile . . . [and] must have the intention to remain there indefinitely.").[4]  Under that definition, "[t]he party need not intend the change to be 'permanent,' but only intend to 'remain at the new home for an indefinite period.'"

---

[4] Under New York state law, the plaintiffs' definition more closely comports with the legal definition of "residence."  *See Yaniveth R. ex rel. Ramona S. v. LTD Realty Co.*, 51 N.E.3d 521, 27 N.Y.3d 186, 193 (2016) ("[T]o consider a place as [a residence], [an individual] must stay there for some length of time and have the bona fide intent to retain the place as a residence with at least *some degree of permanency*." (emphasis added) (internal quotation marks and citation omitted)).

*Apace Commc'ns, Ltd.*, 2009 WL 1748711, at *3 (quoting 13B Charles Alan Wright et al., *Federal Practice & Procedure* § 3613, at 550-51 (3d ed. 2002)).

"Insurance contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." *Cragg v. Allstate Indem. Corp.*, 950 N.E.2d 500, 17 N.Y.3d 118, 122 (2011). Here, there is no reason to think that the average insured would be aware of the definition of domicile under New York state law. *See Dean v. Tower Ins. Co. of N.Y.*, 979 N.E.2d 1143, 19 N.Y.3d 704, 709 (2012) ("[B]ecause the term 'reside' is not defined in the contract . . . , it is arguable that the reasonable expectation of an average insured is that occupancy of the premises would satisfy the policy's requirements." (internal citation omitted)). Indeed, the dictionary defines "domicile" to mean either: (1) "a dwelling place" or a "place of residence"; or (2) "a person's fixed, permanent, and principal home for legal purposes." *See* "Domicile," *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/domicile (last visited March 5, 2025).

Thus, the policies' definition of "resident relative" is ambiguous as a matter of law. *See, e.g.*, *Dean*, 19 N.Y.3d at 709; *Craft v. N.Y. Cent. Mut. Fire Ins. Co.*, 59 N.Y.S.3d 183, 152 A.D.3d 940, 941 (3d Dep't 2017). And all "ambiguities in an insurance policy are to be construed against the insurer." *Breed v. Ins. Co. of N.A.*, 385 N.E.2d 1280, 46 N.Y.2d 351, 353 (1978). So Cincinnati has not "establish[ed] that [its] construction of the [policies] is the only construction that can fairly be placed thereon." *See Centerline/Fleet Hous. P'ship, L.P.—Series B. v. Hopkins Ct. Apartments, LLC*, 111 N.Y.S.3d 761, 176 A.D.3d 1596, 1597 (4th Dep't 2019) (alteration, internal quotation marks, and citation omitted); *see also N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*,

599 F.3d 102, 115 (2d Cir. 2010) (acknowledging that "a determination that a contract is ambiguous ordinarily requires denial of summary judgment"). And for that reason, Cincinnati's cross-motion for summary judgment is denied.

Nevertheless, the plaintiffs also have not established that they are entitled to summary judgment. *See Moleon v. Kreisler Borg Florman Gen. Constr. Co., Inc.*, 758 N.Y.S.2d 621, 304 A.D.2d 337, 339 (1st Dep't 2003) ("The party claiming insurance coverage has the burden of proving entitlement."); *see also C-Suzanne Beauty Salon, Ltd. v. Gen. Ins. Co. of Am.*, 574 F.2d 106, 114 (2d Cir. 1978) ("It is well established in New York that the insured bears the burden of proof on issues of coverage." (collecting cases)). Even accepting their definition of domicile, this Court cannot say definitively on the record before it that at the time of the accident, the plaintiffs intended to remain with the Bahases "indefinitely" such that they were "domiciled" at 9080 Hillview Drive under the policies. And so the plaintiffs' intent and state of mind are issues of fact that a jury must determine.

It is undisputed that the plaintiffs did not intend to live with the Bahases forever. For instance, the plaintiffs testified at their depositions that they intended to move to the 93 Nottingham Terrace property upon its completion. *See* Docket Item 40-29 at 34, 73, 92; Docket Item 40-30 at 27; Docket Item 41-3 at 35, 74, 93; Docket Item 41-4 at 28. They also testified that in June 2019—prior to Heneghan's accident—they purchased a single-family home at 5072 Old Goodrich Road in Clarence, New York, and intended to move into that home. *See* Docket Item 40-29 at 101; Docket Item 40-30 at 46; Docket Item 41-3 at 102; Docket Item 41-4 at 47. And, in fact, the plaintiffs did move into the

home on Old Goodrich Road in August or September 2019.  *See* Docket Item 40-30 at
46; Docket Item 41-4 at 47.

    Of course, the plaintiffs' plans to move into the home on Old Goodrich Road
could have fallen through—as had their plans to move into the Nottingham Terrace
property—but this Court simply cannot say as a matter of law that the plaintiffs' intent to
live with the Bahases was "indefinite."  Rather, this Court finds that there are genuine
issues of material fact about whether the plaintiffs' conduct and state of mind sufficiently
satisfied the policies' domiciliary requirement.  *See, e.g.*, *Dean*, 19 N.Y.3d at 708-09
(finding that there were "issues of fact as to whether [the insured's] daily presence in the
house, coupled with his intent to eventually move in with his family, [was] sufficient to
satisfy the insurance policy's [residency] requirements."); *see also N.Y. Cent. Mut. Fire
Ins. Co. v. Kowalski*, 600 N.Y.S.2d 977, 195 A.D.2d 940, 942 (3d Dep't 1993) ("We
conclude that because there is some evidence, which we do not weigh, supporting both
sides, and different inferences are permissible from the evidence on whether [the
defendant] reestablished his residence at his parents' household, summary judgment
should not have been awarded to [the] plaintiff[;] [t]he factors pointing each way and the
inferences to be drawn therefrom present a question of fact." (internal citations
omitted)).  For those reasons, the plaintiffs' motion for summary judgment is denied as
well.

## CONCLUSION

    For the reasons stated above, the plaintiffs' motion for summary judgment,
Docket Item 40, Cincinnati's cross-motion for summary judgment, Docket Item 41, and

Cincinnati's motion to dismiss, Docket Item 42, are DENIED.  The parties shall contact

chambers within 30 days of the date of this order to schedule a status conference.

     SO ORDERED.

     Dated:  March 5, 2025
              Buffalo, New York


                                    */s/ Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE